United States Court of Appeals,

Fifth Circuit.

No. 95-10441.

Quentin T. KRAMER, M.D., Individually and as Trustee for Various Pension Plans, Quentin T. Kramer, M.D., PA Defined Benefit Pension Plan and Quentin T. Kramer, M.D., PA, Money Purchase Pension Plan/Profit Sharing Plan, Plaintiffs-Appellants,

v.

SMITH BARNEY, formerly known as Shearson Lehman Brothers Inc., and Larry F. Robb, Defendants-Appellees.

April 23, 1996.

Appeal from the United States District Court for the Northern District of Texas.

Before HIGGINBOTHAM and DUHÉ, Circuit Judges, and SCHWARZER, District Judge[*].

SCHWARZER, District Judge:

Dr. Quentin T. Kramer brought this action in Texas state court, alleging state law claims for fraud, negligence, securities violations, and breach of contract arising out of purchases of partnership interests from defendants Smith Barney, Inc. and Larry F. Robb. Defendants removed the action to the district court which then granted their motion to dismiss the action under Fed.R.Civ.P. 12(b)(6) as untimely. Kramer appealed. We have jurisdiction under 28 U.S.C. § 1291 and remand with directions.

*FACTS*

Kramer brought this action as an individual and as trustee of two pension plans for the benefit of himself and his employees.

---

[*]District Judge of the Northern District of California, sitting by designation.

1

Smith Barney is a licensed broker and Robb was its branch manager as well as a licensed broker and financial consultant. Through Robb, Kramer opened three accounts with Smith Barney: an IRA account in his individual capacity, a defined benefit pension plan account, and a money purchase pension plan/profit sharing plan account. He was the trustee of the latter two plans and, along with his employees, a beneficiary. From 1984 through 1989, Kramer purchased from Robb interests in limited partnerships for these accounts. He alleges that he relied on Robb for advice in making those purchases, and that a fiduciary relationship existed between them. He charges that Robb sold him unsuitable investments, made misrepresentations, failed to disclose the true risks, and concealed losses in these accounts which he alleges total one million dollars. On appeal from the granting of a Rule 12(b)(6) motion, we accept the allegations of the complaint as true. *Carney v. Resolution Trust Corp.,* 19 F.3d 950, 954 (5th Cir.1994).

When Kramer opened the accounts with Smith Barney, he signed the standard customer agreement which provided that:

> [A]ny controversy arising out of or relating to my accounts, to transactions with you for me, or to this agreement or the breach thereof, shall be settled by arbitration in accordance with the rules then in effect, of the National Association of Securities Dealers, Inc., or the Board of Directors of the New York Stock Exchange, Inc. and/or the American Stock Exchange, Inc. as I may elect.

Rule 605 of the American Stock Exchange (AMEX) states:

> No dispute, claim or controversy shall be eligible for submission to arbitration in any instance where six (6) years shall have elapsed from the occurrence or event giving rise to the act or the dispute, claim or controversy.

Kramer initiated an arbitration proceeding under the customer

2

agreement in July 1993, within two years after he discovered the true value of his investments but more than six years after he purchased most of them. Smith Barney filed a motion in New York state court to stay arbitration of the claims that were based on purchases made more than six years before the arbitration commenced. The court granted the motion and stayed arbitration of those claims. The Appellate Division of the New York Supreme Court affirmed. Kramer then abandoned the arbitration and filed the instant action in the Texas state court with respect to all of the purchases.

SUBJECT MATTER JURISDICTION

Although neither the District Court nor the parties addressed the question of subject matter jurisdiction, we are obliged to do so. *Ziegler v. Champion Mortgage Co.,* 913 F.2d 228, 229 (5th Cir.1990).

Under the well-pleaded complaint rule, a case does not "arise under" federal law and is not removable if the complaint asserts only state law causes of action. *Franchise Tax Board v. Construction Laborers Vacation Trust,* 463 U.S. 1, 10, 103 S.Ct. 2841, 2846-47, 77 L.Ed.2d 420 (1983). Nor will an anticipated federal defense, including a defense of preemption, support removal. *Caterpillar Inc. v. Williams,* 482 U.S. 386, 393, 107 S.Ct. 2425, 2430, 96 L.Ed.2d 318 (1987). Under the complete preemption doctrine, however, "Congress may so completely pre-empt a particular area that any civil complaint raising this select group of claims is necessarily federal in character." *Metropolitan*

3

*Life Ins. Co. v. Taylor,* 481 U.S. 58, 63-64, 107 S.Ct. 1542, 1546, 95 L.Ed.2d 55 (1987). Consequently, a statute's preemptive force may "convert[ ] an ordinary state common law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule." *Id.* at 65, 107 S.Ct. at 1547. Smith Barney removed this case by invoking federal jurisdiction under the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. §§ 1109 (1982), 1132(a)(2)-(3) (1988), 1144(a) (1982); *Taylor,* 481 U.S. at 67, 107 S.Ct. at 1548.[1] We must determine whether the action is preempted by ERISA and, if so, whether ERISA displaces the state law causes of action asserted.

Kramer filed this action on his own behalf and on behalf of the Kramer Defined Benefit Pension Plan and the Kramer Money Purchase Pension Plan/Profit Sharing Plan. These plans, as "employee benefit plans" within the meaning of ERISA, are covered by ERISA. *See* 29 U.S.C. §§ 1002(2)(A), 1002(3), 1003 (1982). Section 514(a) states that "the provisions of [ERISA] ... shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan." 29 U.S.C. § 1144(a). "[T]he preemption provision is "deliberately expansive' and "designed to "establish pension plan regulation as exclusively a federal concern[.]" ' ... [A] law relates to an ERISA plan "if it has a connection with or reference to such a plan.' " *Anderson*

---

[1]If the claims relating to the ERISA accounts were removable, Kramer's other claims relating to purchases for his personal account were removable as supplemental claims under 28 U.S.C. § 1367 (1994).

4

*v. Electronic Data Sys. Corp.,* 11 F.3d 1311, 1313 (5th Cir.1994) (quoting *Ingersoll-Rand Co. v. McClendon,* 498 U.S. 133, 139, 111 S.Ct. 478, 483, 112 L.Ed.2d 474 (1990)), *cert. denied,* --- U.S. ---, 115 S.Ct. 55, 130 L.Ed.2d 14 (1994). Kramer's state law claims alleging that defendants violated their fiduciary duties to the plans and the beneficiaries relate to ERISA plans and are therefore preempted under section 514(a). *See McClendon,* 498 U.S. at 140, 111 S.Ct. at 483-84 (1990) (Texas common law wrongful discharge cause of action preempted by ERISA).

Having concluded that Kramer's state law claims are preempted, we must next consider whether ERISA displaces those claims under the complete preemption doctrine. This appears to be a question of first impression. *Taylor* involved the issue of whether ERISA section 502(a)(1)(B) preempted and displaced plaintiff's state law claims to recover benefits under an ERISA plan. *See* 481 U.S. at 63-66, 107 S.Ct. at 1546-48; 29 U.S.C. § 1132(a)(1)(B). Thus *Taylor* does not necessarily resolve the specific issue before us which involves section 502(a)(2) instead of section 502(a)(1). We confronted a closely analogous situation, however, in *Anderson,* 11 F.3d at 1315. Anderson claimed that he had been discharged for reporting ERISA violations and failing to commit others. We concluded that Anderson's claims fell within ERISA section 510. *Id.* at 1314. Section 510 makes it unlawful to discharge a person "for the purpose of interfering with the attainment of any right ... under the plan [or ERISA] ... [or] because he has given information ... relating to [ERISA,]" and makes the provisions of

5

section 502 "applicable in the enforcement of this section."  29 U.S.C. § 1140 (1982).  Reasoning that *Taylor* "held that causes of action within the scope of the civil enforcement provisions of ERISA § 502(a) are subject to the complete preemption doctrine[,]" we held Anderson's action to be removable.  *Anderson,* 11 F.3d at 1315.  That reasoning is equally applicable here.  Section 409 of ERISA imposes duties and liabilities on fiduciaries of ERISA plans:

> Any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this subchapter shall be personally liable to make good to such plan any losses to the plan resulting from each such breach....

29 U.S.C. § 1109(a).[2]  ERISA further requires fiduciaries to discharge their duties "solely in the interest of the participants and beneficiaries[,]" using "care, skill, prudence, and diligence." 29 U.S.C. § 1104(a)(1) (1982).  And section 502(a)(2) of ERISA provides for civil enforcement by authorizing a "participant, beneficiary or fiduciary" to bring a civil action "for appropriate relief under section 1109."  29 U.S.C. § 1132(a)(2).  We therefore conclude that because Kramer's state law claims fall within the enforcement provisions of section 502, they are completely preempted and the action was properly removed to the district court.

---

[2]The existence of a fiduciary relationship under ERISA, on the merits, is a mixed question of law and fact.  *See Reich v. Lancaster,* 55 F.3d 1034, 1044-45 (5th Cir.1995);  29 U.S.C. § 1002(21) (1982).  But since defendants removed on the basis of ERISA preemption founded on the complaint's allegations which included allegations of fiduciary breaches relating to ERISA plans, they are bound by those allegations for purposes of subject matter jurisdiction.

ARBITRABILITY OF KRAMER'S CLAIMS

The district court dismissed the action with prejudice on the ground that Kramer could not pursue in court the claims that had been made ineligible for arbitration under Rule 605 by reason of their age. In doing so, the court relied on *Calabria v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 855 F.Supp. 172 (N.D.Tex.1994), which held that claims made ineligible for arbitration under a customer agreement were not litigable in federal court. *Id.* at 176. We review the dismissal of a complaint under Rule 12(b)(6) *de novo. Blackburn v. City of Marshall,* 42 F.3d 925, 931 (5th Cir.1995). We must consider the ERISA claims separately from the personal state law claims.

A. The ERISA claims.

The arbitration clause of the customer agreement is subject to the Federal Arbitration Act ("Arbitration Act") as "[a] written provision in ... a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract." 9 U.S.C. § 2 (1982). The Arbitration Act makes the clause enforceable. *Id.* §§ 2, 3 (1982). At the same time, ERISA vests exclusive jurisdiction of civil actions under ERISA in the district courts. 29 U.S.C. § 1132(e)(1) (1988). We must determine whether ERISA's enforcement provision preempts the Arbitration Act.

In *Shearson/American Express, Inc. v. McMahon,* 482 U.S. 220, 238, 107 S.Ct. 2332, 2343-44, 96 L.Ed.2d 185 (1987), the Supreme Court held that an arbitration clause was enforceable under the

7

Arbitration Act with respect to claims under section 10 of the Securities Exchange Act of 1934 ("Exchange Act"), even though the Exchange Act gives district courts exclusive jurisdiction over actions brought under the Act.[3] The Court held arbitration agreements to be enforceable with respect to statutory claims in the absence of evidence of "congressional intent to exclude ... [those] claims from the dictates of the Arbitration Act." *Id.* at 238, 107 S.Ct. at 2343-44; *see also Rodriguez de Quijas v. Shearson/American Express, Inc.,* 490 U.S. 477, 109 S.Ct. 1917, 104 L.Ed.2d 526 (1989) (enforcing agreement to arbitrate claims under the Securities Act of 1933); *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.,* 473 U.S. 614, 625, 105 S.Ct. 3346, 3353, 87 L.Ed.2d 444 (1985) (enforcing agreement to arbitrate antitrust claims: "[W]e find no warrant in the Arbitration Act for implying in every contract within its ken a presumption against arbitration of statutory claims."). Although this circuit has not confronted the issue, the three circuits to have done so have held that Congress did not intend to prohibit arbitration of statutory ERISA claims, and that arbitration is appropriate "[s]o long as the prospective litigant effectively may vindicate his or her statutory cause of action in the arbitral forum." *Pritzker v. Merrill Lynch, Pierce, Fenner & Smith,* 7 F.3d 1110, 1119 (3rd Cir.1993) (citation omitted) (relying on *McMahon* and *Rodriguez,* court held arbitration

---

[3]Much of the opinion in *McMahon* is devoted to a discussion of Section 29(a) of the Act which declares void "[a]ny condition, stipulation, or provision binding any person to waive compliance with any provision of [the Act]". 15 U.S.C. § 78cc(a). ERISA contains no comparable provision.

agreement binding with respect to claims of fiduciary breaches under ERISA); *see also Bird v. Shearson Lehman/American Exp., Inc.,* 926 F.2d 116 (2nd Cir.1991) (same), *cert. denied,* 501 U.S. 1251, 111 S.Ct. 2891, 115 L.Ed.2d 1056 (1991); *Arnulfo P. Sulit, Inc. v. Dean Witter Reynolds,* 847 F.2d 475 (8th Cir.1988) (same).

We agree that Congress did not intend to exempt statutory ERISA claims from the dictates of the Arbitration Act. Accordingly, we hold that the customer agreement mandates arbitration of Kramer's ERISA claims.

We now reach the question whether AMEX Rule 605 applies to the arbitration of those claims. That rule, incorporated by reference into the customer agreement, renders ineligible for arbitration claims where "six (6) years shall have elapsed from the occurrence or event giving rise to the act or the dispute, claim or controversy." The New York court ruled most of Kramer's claims ineligible under this rule.

ERISA contains its own statute of limitations. It bars claims:

[A]fter the earlier of—

(1) six years after (A) the date of the last action which constituted a part of the breach or violation, or ... (2) three years after the earliest date (A) on which the plaintiff had actual knowledge of the breach or violation ...;

except that in the case of fraud or concealment, such action may be commenced not later than six years after the date of discovery of such breach or violation.

29 U.S.C. § 1113 (Supp. V 1987 & Supp. I 1989). Thus ERISA permits tolling of the statute of limitations in cases of fraud or

9

concealment. Under section 410, "any provision in an agreement or instrument which purports to relieve a fiduciary from responsibility or liability for any responsibility, obligation, or duty under [ERISA] shall be void as against public policy." 29 U.S.C. § 1110(a) (1982). To the extent the AMEX rule renders ineligible for arbitration ERISA claims more than six years old which could otherwise be enforced on proof of fraud or concealment, it "relieve[s] a fiduciary from ... liability." *Id.* In holding that an arbitration agreement may be enforced with respect to ERISA fiduciary claims, the court in *Sulit* reasoned:

> Under this statutory structure, an agreement to waive the judicial forum allowed for in section 1132(e) in favor of arbitration does not carry with it the waiver of any substantive duties or liabilities, and thus, no fiduciary has been impermissibly relieved of any "responsibility, obligation, or duty" imposed by [ERISA].

847 F.2d at 478 (citations omitted); *see also Soler,* 473 U.S. at 628, 105 S.Ct. at 3354 ("By agreeing to arbitrate a statutory claim, a party does not forgo the substantive rights afforded by the statute...."); *de Coninck v. Provident Life and Ins. Co.,* 747 F.Supp. 627, 633 (D.Kan.1990) (applying ERISA limitations period despite shorter limitations period in parties' insurance contract); *compare Calabria,* 855 F.Supp. at 175 (AMEX rule binding where no ERISA claim involved). Because application of Rule 605 to render Kramer's ERISA claims ineligible for arbitration would impair his substantive rights, we hold it void with respect to those claims.

Since the district court's ruling dismissing the action was premised on the ineligibility of Kramer's claims under the AMEX rule, it must be set aside to permit arbitration of the ERISA

10

claims.[4]  While we recognize that neither party raised the ERISA issues in the district court, since subject matter jurisdiction is founded on ERISA, those issues cannot be avoided.  Because ERISA permits tolling of its statute of limitations for fraud or concealment, we need not address Kramer's arguments why tolling should be permitted under the customer agreement with respect to the ERISA claims.

We reject defendants' contention that those claims are barred by collateral estoppel on the basis of the New York court's ruling. The courts of the United States give the judicial proceedings of a state court "the same full faith and credit ... as they have by law or usage in the courts of such State."  28 U.S.C. § 1738.  The district courts have exclusive jurisdiction under section 502(e)(1) of actions to enforce fiduciary obligations under ERISA.  *See Retail Shoe Health Comm. v. Reminick,* 62 N.Y.2d 173, 476 N.Y.S.2d 276, 464 N.E.2d 974 (1984), *cert. denied,* 471 U.S. 1022, 105 S.Ct. 2034, 85 L.Ed.2d 316 (1985).  The New York court therefore lacked subject matter jurisdiction, and under New York law, "[a] judgment ... issued without subject matter jurisdiction is void." *Editorial Photocolor Archives, Inc. v. Granger Collection,* 61 N.Y.2d 517, 474 N.Y.S.2d 964, 967, 463 N.E.2d 365, 368 (1984);  *see also Marrese v. American Academy of Ortho. Surgeons,* 470 U.S. 373, 382, 105 S.Ct. 1327, 1333, 84 L.Ed.2d 274 (1985) ("If state preclusion law includes this requirement of prior jurisdictional competency, which

---

[4]We leave it to the arbitrator to decide whether application of the ERISA statute of limitations bars any of Kramer's claims.

11

is generally true, a state judgment will *not* have claim preclusive effect on a cause of action within the exclusive jurisdiction of the federal courts.").

B. Kramer's personal claims.

Kramer's non-ERISA claims, over which the court has supplementary jurisdiction, are subject to the arbitration clause and AMEX Rule 605. Those claims that arose out of transactions that occurred more than six years before the arbitration are ineligible. Kramer is collaterally estopped by the New York judgment to contend that the claims are arbitrable because of fraudulent concealment.[5] The New York court held specifically that "[t]hese [AMEX] rules are substantive eligibility requirements, not statutes of limitations, and may not be tolled. The arbitration therefore may not proceed insofar as it concerns partnership interests purchased six years or more prior to the commencement of the original arbitration." *Shearson Lehman Bros., Inc. and Larry F. Robb v. Quentin T. Kramer,* No. 101339/93, 5 (N.Y.Sup.Ct. Nov. 16, 1993). We are bound to give full faith and credit to this final decision of a state court. *Raju v. Rhodes,* 7 F.3d 1210, 1214 (5th Cir.1993) ("[O]nce a court of competent jurisdiction decides an issue of fact or law necessary to its judgment, the same parties to that judgment cannot relitigate that issue in a different action.").

---

[5]Because the parties did not raise the issue, we do not decide whether Kramer's failure to exhaust the arbitration proceeding he commenced results in an abandonment of arbitrable claims.

12

Kramer contends, however, that he is entitled to litigate in court claims ineligible for arbitration. This too appears to be an issue of first impression in the courts of appeals, though several district courts have ruled on it. Arbitration is a creature of contract and the scope of the parties' obligation to arbitrate must be determined by reference to the terms of the agreement. *Commercial Metals Co. v. Balfour, Guthrie, and Co.,* 577 F.2d 264, 266 (5th Cir.1978). The customer agreement provides that "[u]nless unenforceable due to federal or state law, any controversy arising out of or relating to [transactions between the parties] ... shall be settled by arbitration." The intention underlying the agreement quite plainly is to require the submission of all claims to arbitration, subject only to the express exemption for claims not arbitrable under federal or state law. It would be bizarre to interpret the agreement to exempt stale claims from arbitration. We hold the customer agreement to bar litigation of the claims that are ineligible for arbitration.

## CONCLUSION

We REMAND to the district court with directions to enter judgment directing the parties to submit the ERISA claims to arbitration and dismissing with prejudice all remaining claims.