William J. WILLIAMS, Plaintiff,

v.

**HEALTHALLIANCE HOSPITALS, INC. and John Doe, Defendants.**

CIV. A. No. 00–40097NMG.

United States District Court, D. Massachusetts.

Sept. 10, 2001.

Richard J. Yurko, Yurko & Perry, Boston, MA, for plaintiff.

Michael L. Rosen, Foley, Hoag & Eliot, Boston, MA, Robert A. Fisher, Foley, Hoag & Eliot LLP, Boston, MA, for defendant.

## MEMORANDUM AND ORDER

GORTON, District Judge.

This case arises out of a dispute over the payment of retirement benefits. Now pending before this Court is plaintiff's motion to compel arbitration (Docket No. 19) and defendants' emergency motion for a stay of arbitration (Docket No. 23). Also before this Court are defendants' motions to dismiss for failure to state a claim upon which relief can be granted (Docket Nos. 26 and 40) and defendants' motion for a short order of notice (Docket No. 22).

## I. *Background*

For over 22 years, the plaintiff, William J. Williams ("Williams") served as the Director and CEO of Burbank Hospital and its successors ("the Hospital") and later as President and CEO of the Hospital's parent corporation, CentMass Health System. Defendant, HealthAlliance Hospitals, Inc. ("HealthAlliance"), is the successor-in-interest to the Hospital.

In order to offer Williams a more competitive compensation package, in 1986 the Hospital's Board of Trustees voted to establish a Supplemental Executive Retirement Plan ("the SERP") whereby Williams would receive an annual retirement benefit equal to 100% of his highest annual salary in the five years preceding his retirement at age 60 (or a lesser amount should he leave his employment or retire before that time). The SERP was funded by life insurance policies.

According to Williams, in 1989 the Hospital proposed a change in his retirement plan which would be advantageous to the Hospital but supposedly still provide him with the same vested benefits to which he was entitled under the SERP. As a result, in 1990, the SERP was superceded by an agreement establishing a so-called "split dollar" insurance plan ("the Split Dollar Plan"). Under the Split Dollar Plan, ownership of the insurance policies which funded the SERP was transferred to Williams, while the Hospital continued to pay the annual premiums. The Hospital retained a security interest in those premiums, entitling it to recover their value plus 5% upon Williams' death. Williams' beneficiaries were to receive any remaining death benefits.

In 1996, at the age of 58, Williams retired from the Hospital. In 1999, he requested in writing that he receive his full benefits for 1998 and 1999. Williams alleges that, on October 19, 1999, HealthAlli-ance refused to make life insurance policy dividends or cash values available to him on an ongoing basis during his retirement because it believed that there would otherwise be a shortfall in the amount of death benefits available to reimburse it for premiums paid under the Split Dollar Plan. He further alleges that, on December 23, 1999, HealthAlliance refused to purchase the additional insurance necessary to fulfill its obligations under the Split Dollar Plan. Sometime in 2000, the Hospital finally released to Williams certain retirement benefits for the years 1998 and 1999. On December 14, 2000, Williams requested in writing that he receive his full benefits for the year 2000. That request was apparently approved.

On May 12, 2000, Williams brought suit against HealthAlliance in Massachusetts state court seeking declaratory and equitable relief, pursuant to state law, for HealthAlliance's alleged breach of its contractual undertaking to provide him with retirement benefits.

On June 12, 2000, HealthAlliance removed to this Court on the basis of federal question jurisdiction. On March 27, 2001, this Court dismissed the complaint, finding that the state law claims were preempted by the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 *et seq.*, and denied Williams' motion to compel arbitration. Those rulings were, however, made without prejudice to Williams filing an amended complaint stating causes of action under ERISA and a renewed motion to compel arbitration.

On May 24, 2001, Williams initiated arbitration proceedings with the American Arbitration Association ("the AAA"). That same day, his attorney contacted counsel for HealthAlliance to determine if it was amenable to arbitration. Counsel for

HealthAlliance informed plaintiff's counsel that it would oppose arbitration.

A few days later, Williams filed a 14-count Amended Complaint against HealthAlliance and John Doe, the unidentified fiduciary for the Split Dollar Plan, which contained various ERISA claims, several federal common law claims and a request for an order compelling arbitration. A Second Amended Complaint, filed on July 20, 2001, added another ERISA claim.

Although the parties agreed to a brief stay of arbitration, proceedings were scheduled to go forward before the AAA in August, 2001. On August 21, 2001, this Court orally informed the parties of its decision to compel arbitration. This memorandum and order supplies the basis for that decision.

## II. *Analysis*

Williams seeks an order compelling arbitration of all claims in light of an arbitration clause in the Split Dollar Plan pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1–16.

■■■ Arbitration provisions contained in a contract "evidencing a transaction involving commerce" are governed by the FAA. 9 U.S.C. § 2. The term "involving commerce" should be construed to the full extent of Congress' commerce power. *Allied–Bruce Terminix Companies, Inc. v. Dobson,* 513 U.S. 265, 277, 115 S.Ct. 834, 130 L.Ed.2d 753 (1995). Although both Williams and HealthAlliance are Massachusetts citizens, the Split Dollar Plan qualifies as a contract "involving commerce" because two of the three insurance policies by which it is funded were issued by a New York life insurance company. Those policies are vital to the purpose of the Split Dollar Plan and are, therefore, sufficient to subject that plan to FAA coverage. In any event, HealthAlliance does not contest the applicability of the FAA.

Section 4 of the FAA provides, in pertinent part:

> A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition... the [court]... for an order directing that such arbitration proceed in the manner provided for in such agreement.

9 U.S.C. § 4.

■■■ There is a strong federal policy favoring arbitration. *Moses H. Cone Memorial Hospital v. Mercury Constr. Corp.,* 460 U.S. 1, 24–25, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983). Therefore, any doubt over whether a particular dispute is covered by an arbitration agreement should be resolved in favor of arbitration. *AT & T Technologies, Inc. v. Communications Workers,* 475 U.S. 643, 650, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986). When a valid arbitration clause exists, the party opposing arbitration must show "with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *Id.* (*quoting Steelworkers v. Warrior & Gulf Navigation Co.,* 363 U.S. 574, 582–83, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960)).

■■■ The federal presumption of arbitrability, however, "presumes proof of a preexisting agreement to arbitrate disputes...." *McCarthy v. Azure,* 22 F.3d 351, 355 (1st Cir.1994). "Thus, a party seeking to substitute an arbitral forum for a judicial forum must show, at a bare minimum, that the protagonists have agreed to arbitrate *some* claims." *Id.* at 354–55 (emphasis in original).

■■■ Accordingly, in order to compel arbitration pursuant to § 4 of the FAA, this Court must find that 1) there exists a written agreement to arbitrate, 2) the dispute in question falls within the scope of

that agreement, and 3) the party seeking arbitration has not waived its right to arbitration. *Bangor Hydro–Electric Co. v. New England Tel. and Tel. Co.,* 62 F.Supp.2d 152, 155 (D.Me.1999) (*citing Brennan v. King,* 139 F.3d 258, 263–67 (1st Cir.1998)). This Court addresses each element *seriatim.*

## A. Agreement to Arbitrate

Paragraph 11(c) of the Split Dollar Plan addresses requests for benefits under the plan:

> The Employee or any beneficiary of his may file a request for benefits with the plan administrator. If a claim request is wholly or partially denied, the plan administrator will furnish to the claimant a notice of decision within thirty (30) days after receipt of the claim in writing. . . .

Paragraph 11(e) contains the following arbitration provision:

> If the claimant is dissatisfied with the Employer's decision, he or she may invoke binding mandatory arbitration before a single arbitrator, such arbitration to be conducted in Worcester, Massachusetts in accordance with the rules of the American Arbitration Association and the decision of the arbitrator may be entered in a court of competent jurisdiction.

The parties do not dispute that ¶ 11(e) is a valid arbitration agreement but they disagree as to the scope of that agreement.[1]

## B. Scope of the Arbitration Agreement

■ Defendants contend that ¶ 11(e) does not encompass Williams' claims because it only permits arbitration of one narrow issue: whether he was or was not entitled to benefits under the Split Dollar Plan. Any statutory claims arising out of HealthAlliance's decision to deny him benefits are, according to the defendants, beyond the scope of that issue and therefore not arbitrable.

Paragraph 11(e) allows a claimant who is "dissatisfied" with a decision regarding benefits to invoke binding mandatory arbitration. Defendants correctly point out that ¶ 11(e) does not apply to all claims that Williams might ever bring against HealthAlliance precisely because it is part of a larger section dealing only with requests for benefits. For example, if Williams sued HealthAlliance for age discrimination, his claim would not be arbitrable under ¶ 11(e). Unlike a claim for age discrimination, Williams' ERISA claims are arguably connected to HealthAlliance's decision to deny him benefits. So too are his federal common law claims for breach of contract and breach of fiduciary duty. In fact, he would not be asserting those

---

1. Defendant protests that because defendant John Doe did not sign the Split Dollar Plan he is not bound by its arbitration provision. The Second Amended Complaint, however, refers to John Doe primarily as a representative of HealthAlliance, not in his individual capacity. To the extent that he faces individual liability as in Count IV which alleges that he breached his fiduciary duties as plan administrator pursuant to Section 409 of ERISA, 20 U.S.C. § 1109, he remains bound to arbitrate because those fiduciary duties specifically arose out of his role as an agent of HealthAlliance.

*See Pritzker v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 7 F.3d 1110, 1121 (3d Cir.1993)("[b]ecause a principle is bound under the terms of a valid arbitration clause, its agents, employees, and representatives are also covered. . . ."). HealthAlliance's complaint that John Doe cannot be compelled to arbitrate because his identity is unknown is disingenuous because HealthAlliance can obviously determine his identity. It will not be permitted to use such an excuse to avoid arbitration.

claims were he not "dissatisfied" with the denial of benefits.

In their memorandum in support of their motion for a stay of arbitration, defendants misread *Brennan v. King*, 139 F.3d 258 (1st Cir.1998) as standing for the proposition that a claimant cannot rely on an arbitration provision that is part of a benefits claim procedure as a basis for seeking an order to compel arbitration. In *Brennan*, the First Circuit held that arbitration of a dispute regarding the decision to deny plaintiff faculty member tenure could not be compelled under an arbitration provision permitting a tenure candidate to submit "procedural issues" regarding the tenure review process to arbitration. *Id.* at 264–66. Paragraph 11(e), by contrast, does not limit arbitration to "procedural issues" such as notification of a decision denying benefits, nor does Williams seek to arbitrate "procedural issues". His claims go to the merits of the decision to deny benefits and whether that decision violated certain provisions of ERISA as well as federal common law.

## C. Waiver

■ Defendants argue that Williams waived any right to arbitrate by bringing suit (originally in state court) before filing a demand with the AAA. In his original complaint, however, Williams sought an order compelling arbitration should the court find that his state law claims were covered by the arbitration clause in the Split Dollar Plan. Moreover, prior to filing the original complaint, Williams' attorney spoke with defendants' former counsel by telephone and requested that the case be referred to arbitration. That request was apparently refused.

Defendants maintain that Williams was asking for arbitration only as a second choice to litigation. Accordingly, they contend that he did not really become interested in arbitration until the case was removed to federal court in contravention of his desire to proceed in state court.

It not possible to determine whether Williams sincerely desired arbitration from the outset of this litigation. Nonetheless, he did not suddenly discover an affection for it on the eve of trial. *See, e.g., Brennan*, 139 F.3d at 264 ("We have found arbitration defenses waived when a party sought to take advantage of an arbitration clause by raising the issue as a defense late in the litigation."); *Navieros Inter-Americanos, S.A. v. M/V Vasilia Express*, 120 F.3d 304, 316 (1st Cir.1997) ("[T]he very rationale for arbitration may be undercut if a party is permitted to pursue a claim through the courts and then later claim a right to arbitration."). He has asserted his right to arbitration from the beginning of this case and will not, therefore, be deemed to have waived it simply by virtue of seeking judicial enforcement of that right.

## D. Absence of External Legal Restraints

■ In determining arbitrability, this Court notes that no external legal restraints foreclose the arbitration of ERISA claims. Although the First Circuit has not yet addressed the issue, other federal courts have held that Congress did not intend to exclude actions arising under both the remedial and substantive portions of ERISA from arbitration pursuant to the FAA. *See, e.g., Williams v. Imhoff*, 203 F.3d 758, 767 (10th Cir.2000); *Kramer v. Smith Barney*, 80 F.3d 1080, 1084 (5th Cir.1996); *Pritzker v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 7 F.3d 1110, 1111, 1116–21 (3d Cir.1993); *Bird v. Shearson Lehman/American Express, Inc.*, 926 F.2d 116, 119–120, 122 (2d Cir.1991).

Defendants attempt to limit the holdings of those cases by arguing that the courts only allowed arbitration of ERISA claims because they were faced with broad arbitration provisions. *See, e.g., Williams,* 203 F.3d at 762 ("I agree to arbitrate any dispute, claim or controversy that may arise between me and my firm."); *Kramer,* 80 F.3d at 1082 (agreement to arbitrate "any controversy"); *Pritzker,* 7 F.3d at 1114 (agreement to arbitrate "all controversies which may arise. . . ."). Nothing in the cited cases, however, suggests that the breadth of the arbitration clause at issue was dispositive. Instead, the courts focused on the text and legislative history of ERISA in concluding that ERISA claims are arbitrable. *See, e.g., Williams,* 203 F.3d at 767; *Kramer,* 80 F.3d at 1084; *Pritzker,* 7 F.3d at 1116–21. Moreover, the mere fact that ERISA claims were deemed arbitrable under broad arbitration clauses does not necessarily render such claims unarbitrable under a narrower arbitration provision such as ¶ 11(e). Even though that paragraph does not cover all controversies which may arise between Williams and HealthAlliance, it specifically addresses dissatisfaction with decisions regarding benefits claims made under an ERISA-governed plan.

## E. Conclusion

Defendants have failed to carry their burden of showing that ¶ 11(e) is not susceptible of an interpretation that renders Williams' claims arbitrable and the federal presumption of arbitrability therefore mandates arbitration of this case. Because the arbitrability of Williams' claims has been decided, defendants' emergency motion for a stay of arbitration in order to permit this Court to decide that issue is now moot. So to is the motion for a short order of notice.

## ORDER

For the reasons set forth in the Memorandum above:

1) plaintiff's motion to compel arbitration (Docket No. 19) is ALLOWED. The parties shall file with this Court joint quarterly reports on the status of such proceedings beginning in December, 2001;

2) defendants' motion for a short order of notice (Docket No. 22) is DENIED as moot;

3) defendants' emergency motion for a stay of arbitration (Docket No. 23) is DENIED; and

4) defendant's motions to dismiss (Docket Nos. 25 and 40) are DENIED, without prejudice to being refiled, if necessary, after completion of arbitration.

So ordered.