*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

MOSES WEBB,

Plaintiff-Appellant,

V

FIDELITY BROKERAGE SERVICES d/b/a
FIDELITY INVESTMENTS,

Defendant-Appellee.

UNPUBLISHED
July 29, 2021

No. 354691
Genesee Circuit Court
LC No. 18-111894-CZ

Before: HOOD, P.J., and MARKEY and GLEICHER, JJ.

PER CURIAM.

Plaintiff Moses Webb appeals by right the trial court's order granting summary disposition in favor of defendant Fidelity Brokerage Services under MCR 2.116(C)(7). The trial court agreed with Fidelity's contention that the parties' brokerage contract contained a valid and enforceable agreement to arbitrate. We affirm.

## I. THE COMPLAINT

On November 13, 2018, Webb filed a civil suit against Fidelity. Webb alleged that he retired from General Motors (GM) after a 44-year career with GM. He stated that his retirement funds consisted of 18,330 shares of GM common stock which had been and were entrusted with Fidelity. Webb asserted that he "relied on the asset protection offered by . . . Fidelity and [its] prudent investment advice." He claimed that he had attempted to communicate with Fidelity regarding the status of his shares in light of GM's June 2009 bankruptcy, but he received "no clear, acceptable answers to his questions[.]" Webb alleged that he had invested $79,404 of his hard-earned income in the GM common stock, that the value of his shares was $7,905 in mid-2010, and that Fidelity sent him a statement in March 2011 indicating that his stock was valued at $768. According to Webb, Fidelity subsequently sent him "a statement reflecting less than a $500 balance in the account." Webb maintained that Fidelity mailed him a gross distribution retirement check in the amount of $.36 in June 2018. He contended that GM had offered stock buybacks, but Fidelity failed to provide him with any information with regard to the possibility of a buyback of his GM stock. Webb alleged that he made numerous demands—all ignored— seeking information

-1-

regarding steps that Fidelity could take to preserve his interest in the GM stock or to recoup his investment. Webb also received no response when he asked Fidelity whether there was any action that he could personally take to protect against loss.

In a single count, Webb alleged that Fidelity breached its fiduciary duty and responsibility to protect invested assets, that Fidelity fraudulently withheld investment funds and earnings, and that Fidelity failed to pursue recoupment of losses through a common stock buyback program offered by GM. Webb contended that Fidelity owed a duty of prudence under the Employee Retirement Income Security Act of 1974 (ERISA), 29 USC 1001 *et seq*., specifically 29 USC 1104(a)(1), obligating Fidelity to regularly monitor Webb's shares of GM stock for changed circumstances, such as GM's bankruptcy, in order to protect against or recoup investment losses, including participation in the buyback program. Webb set forth allegations regarding GM's bankruptcy, the associated bailout or loan by the federal government, which resulted in the government's majority ownership of GM stock, partial repayment by GM to the government, and GM's handout of stock to GM executives valued at $1.3 million despite the bankruptcy.

Webb alleged that "[b]reach of fiduciary duty can be a continuing violation that extends the limitations period for filing suit" and that "[e]ven though the investments were purchased more than six years earlier, a trustee generally has a continuing duty to monitor investments after the initial purchase." Webb again asserted that Fidelity had a duty to take prudent action to preserve or recoup his investment. In his prayer for relief, Webb sought compensatory damages in the amount of $79,404, which represented the purchase price for the stock, plus interest, any punitive damages for fraudulent conduct, attorney fees, costs, and any other relief that the court deemed fair and just.

## II. PROCEDURAL HISTORY

On January 11, 2019, in lieu of filing an answer, Fidelity moved for summary disposition pursuant to MCR 2.116(C)(7), arguing that Webb's "claims are undeniably untimely and should be dismissed." Fidelity contended that all of the relevant acts and events at issue took place well over six years ago and that a six-year period was the longest possible limitations period available to Webb. According to Fidelity, because the alleged wrongful conduct occurred more than six years before Webb's complaint was filed, the action was time-barred, and summary dismissal was required. Alternatively, Fidelity argued that Webb's lawsuit should be dismissed because he agreed to arbitrate any disputes with Fidelity in the Fidelity Brokerage Retirement Customer Account Agreement (the brokerage contract). The brokerage contract, dated July 24, 2008, contained the following arbitration clause:

## Resolving Disputes — Arbitration

This agreement contains a pre-dispute arbitration clause. Under this clause, which you agree to when you sign your account application, you and Fidelity agree as follows:

A. All parties to this agreement are giving up the right to sue each other in court, including the right to a trial by jury, except as provided by the rules of the arbitration forum in which a claim is filed.

B. Arbitration awards are generally final and binding; a party's ability to have a court reverse or modify an arbitration award is very limited.

C. The ability of the parties to obtain documents, witness statements, and other discovery is generally more limited in arbitration than in court proceedings.

D. The arbitrators do not have to explain the reason(s) for their award.

E. The panel of arbitrators will typically include a minority of arbitrators who were or are affiliated with the securities industry.

F. The rules of some arbitration forums may impose time limits for bringing a claim in arbitration. In some cases, a claim that is ineligible for arbitration may be brought in court.

G. The rules of the arbitration forum in which the claim is filed, and any amendments thereto, shall be incorporated into this agreement.

All controversies that may arise between you and us concerning any subject matter, issue, or circumstance whatsoever (including, but not limited to, controversies concerning any account, order or transaction, or the continuation, performance, interpretation or breach of this or any other agreement between you and us, whether entered into or arising before, on, or after the date this account is opened) shall be determined by arbitration in accordance with the rules then prevailing of the Financial Industry Regulatory Authority (FINRA) or any United States securities self-regulatory organization or United States securities exchange of which the person, entity, or entities against whom the claim is made is a member, as you may designate. If you designate the rules of a United States self-regulatory organization or United States securities exchange and those rules fail to be applied for any reason, then you shall designate the prevailing rules of any other United States securities self-regulatory organization or United States securities exchange of which the person, entity, or entities against whom the claim is made is a member. If you do not notify us in writing if your designation within five (5) days after such failure or after you receive from us a written demand for arbitration, then you authorize us to make such designation on your behalf. The designation of the rules of a self-regulatory organization or securities exchange is not integral to the underlying agreement to arbitrate. You understand that judgment upon any arbitration award may be entered in any court of competent jurisdiction.

No person shall bring a putative or certified class action to arbitration, nor seek to enforce any predispute arbitration agreement against any person who has initiated in court a putative class action; or who is a member of a putative class action who has not opted out of the class with respect to any claims encompassed by the putative class action until: (i) the class certification is denied; or (ii) the class is decertified; or (iii) the customer is excluded from the class by the court. Such forbearance to enforce an agreement to arbitrate shall not constitute a waiver of any rights under this agreement except to the extent stated herein.

Fidelity did not submit the entire brokerage contract, and there was no signature page.

In response to Fidelity's motion for summary disposition, Webb argued that breach of fiduciary duty can constitute a continuing violation that extends the limitations period for filing suit and that even though his purchase of stock occurred more than six years earlier, there was a continuing duty to monitor the investment after the initial purchases that carried forward to this day. With respect to the arbitration argument posed by Fidelity, Webb claimed "that he never received, signed, nor agreed to waive his right to a jury trial on his claims . . . and that the asserted arbitration provision is not supported by any admissible proof or verification, affidavit, or otherwise, and should be disregarded."

In a reply brief, Fidelity argued that Webb's contention that Fidelity had to continually monitor the status of his GM shares was legally unsupportable and that Webb's action was barred by ERISA's six-year statute of repose, which was triggered not later than March 2011 when Webb admitted that he knew of his losses. In cursory fashion, Fidelity again asserted that, in the alternative, the suit should be dismissed in light of the arbitration clause in the brokerage contract.

On March 4, 2019, a hearing was conducted on Fidelity's motion for summary disposition. The primary focus of the hearing was on the issue concerning the statute of limitations.[1] During

---

[1] On the day of the summary disposition hearing, Webb moved to stay the proceedings pending the outcome of a petition for a writ of certiorari filed in the United States Supreme Court in a federal case involving construction of ERISA's statute of limitations. We note that the Supreme

one stage of the hearing, the trial court asked Fidelity whether it had a signed copy of the brokerage contract containing the arbitration clause. Counsel for Fidelity indicated that the application for the brokerage account was signed by Webb, which acknowledged and incorporated the arbitration clause, and that it was somewhere in a "stack of documents." Webb's attorney observed that she did not have a signed document by her client agreeing to arbitration and that, regardless, an arbitration clause cannot preempt or usurp a statutory right to a judicial remedy under ERISA. At the end of the hearing, the trial court indicated that it was taking the matter under advisement. The court noted that it was going to look at a couple of cases and think about Webb's motion for a stay.

A few days after the summary disposition hearing, Fidelity submitted a supplemental filing in connection with its motion for summary disposition. Fidelity presented the trial court with a customer account application signed by Webb in November 2008, and in the application there is a provision indicating acknowledgement by the signor, Webb, that he received the brokerage contract and that he had read, understood, and agreed "to be bound by its terms and conditions as they are currently in effect and as they may be amended in the future." There is an even more specific provision immediately preceding the signature line in the application, stating as follows:

> The IRA established with this application is governed by a predispute arbitration clause, which is located on the last page of the . . . [brokerage contract]. I acknowledge receipt of the predispute arbitration clause.

On March 25, 2019, at which point the court had yet to rule on the motion for summary disposition, Webb filed a response to Fidelity's supplemental brief. Webb accurately noted that the customer account application ostensibly executed by Webb also provides that the "agreement shall be construed, administered, and enforced according to the laws of the Commonwealth of Massachusetts, except as superseded by federal law or statute." Webb also accurately indicated that the arbitration clause in the brokerage contract states that "[i]n some cases, a claim that is ineligible for arbitration may be brought in court." Webb argued that the arbitration clause was superseded by federal law and statute—ERISA—and that his claims were ineligible for arbitration and could thus be pursued in a court of law. He maintained that ERISA expressly preempts state regulation of employee benefit plans and specifically provides for civil actions in 29 USC 1132. Webb asserted that Congress, by enacting ERISA, intended to allow participants of employee benefit plans to file civil lawsuits in order to enforce substantive rights. He also contended that the customer account application and the brokerage contract were executed in 2008 and would

---

Court later granted certiorari and then issued an opinion in that case, *Intel Corp Investment Policy Comm v Sulyma*, __ US __; 140 S Ct 768, 773; 206 L Ed 2d 103 (2020), wherein the Supreme Court stated and held:

> [E]RISA[] requires plaintiffs with "actual knowledge" of an alleged fiduciary breach to file suit within three years of gaining that knowledge rather than within the 6-year period that would otherwise apply. The question here is whether a plaintiff necessarily has "actual knowledge" of the information contained in disclosures that he receives but does not read or cannot recall reading. We hold that he does not . . . . [Citations omitted.]

only apply, if at all, to those shares of GM stock that Webb rolled over into the IRA after the effective dates of those documents. Webb stated that his 18,300 shares of GM stock were purchased over his 44 years with GM and that he only purchased 2,000 of those shares after GM filed for bankruptcy in 2009.

On April 1, 2019, the trial court held a hearing to rule on the motion for summary disposition and the motion for stay. The trial court summarized the principles applicable to a (C)(7) motion and contract interpretation, noted the nature of Webb's complaint, including the claim of breach of fiduciary duty under ERISA, and determined that the arbitration clause was enforceable, making it unnecessary to rule on Fidelity's assertion that the action was time-barred. The court quoted language in the arbitration clause, which provides that "[a]ll parties to this agreement are giving up the right to sue each other in court, including the right to a trial by jury, except as provided by the rules of the arbitration forum in which a claim is filed." The trial court then ruled:

> Given this language, it does appear . . . to this [c]ourt that [Webb's] cause of action must first be submitted to the mutually agreed upon pre-dispute arbitration process.

> So, for those reasons, the Court is granting . . . [Fidelity's] motion for summary disposition at which point the motion for the stay is moot.

We note that the trial court did not address any of Webb's ERISA arguments. And Webb subsequently moved for reconsideration in late April 2019. He argued that with respect to violations of ERISA's substantive standards of conduct, ERISA provides participants with the right to obtain relief through civil actions. Therefore, according to Webb, agreements to arbitrate such matters are not generally enforceable under ERISA. He renewed his assertion about congressional intent authorizing civil suits for ERISA violations. Webb further contended that under ERISA any waiver of substantive rights must be made knowingly and willingly. He also indicated that the customer account application and the brokerage contract were two separate and distinct documents and that the brokerage contract containing the arbitration clause was not attached to the application that Webb allegedly signed. Webb continued:

> Under basic contract principles, [Webb] should have had the writing which he was affirming, agreeing to and accepting, attached and incorporated into the document he was signing, so that he could have reviewed the specific provision that waived his right to a civil action and limited him to arbitration as a sole remedy and eliminating his statutory right to a civil action.

Webb additionally maintained that withholding information and engaging in deceit constituted breaches of Fidelity's substantive fiduciary duties. Webb complained that Fidelity failed to disclose GM's precarious financial situation to Webb and other investors and the impact it would have on their investments. He further claimed that silence is recognized as a fiduciary breach. Webb also repeated his earlier argument concerning the 2008 dates of the customer account application and brokerage contract and the fact that most of his shares were purchased beforehand.

On July 15, 2019, Webb moved for leave to file a supplemental brief in support of his motion for reconsideration. Webb asserted that there was new evidence of fraudulent bookkeeping practices by Fidelity as revealed in recent ERISA cases filed in federal courts. Fidelity filed a brief in opposition to Webb's motion for leave, arguing, in part, that Webb's motion should be denied because the issues raised by Webb were required to be heard in an arbitration forum. In September 2019, Webb moved for rulings on his motion for reconsideration and motion for leave to file a supplemental brief, as the trial court had not yet issued any decisions on the motions. On November 8, 2019, the trial court issued a written order denying Webb's motion for reconsideration. The court opined that Webb relied exclusively on ERISA. The trial court then stated that "[w]hile not expressly discussed on the record, this [c]ourt found that ERISA is not applicable to this matter given that [Webb's] deposits appear to be personal and individualized rather than as part of an employer designated employee retirement account." With respect to Webb's argument that he signed the customer account application without the requisite knowledge concerning arbitration, the trial court ruled that "the law is clear that one who signs an agreement, in the absence of coercion, mistake, or fraud, is presumed to know the nature of the document and to understand its contents, even if he or she has not read the agreement." To the extent that Webb was claiming that his signature was obtained through fraud or deceit, the court found that the "argument was not previously raised and is not presently supported by evidence that might demonstrate that this [c]ourt erred so egregiously that reversal is warranted."

Webb filed a claim of appeal in this Court, and a motion to dismiss was granted because there was no actual order granting summary disposition in favor of Fidelity in the record. *Webb v Fidelity Brokerage Servs*, unpublished order of the Court of Appeals, entered January 14, 2020 (Docket No. 351770). Although the trial court had ruled from the bench that Fidelity's motion for summary disposition was granted, no order to that effect was ever entered. By order dated January 23, 2020, the trial court entered a *nunc pro tunc* order granting Fidelity's motion for summary disposition. Webb then moved for reconsideration in this Court in Docket No. 351770, which filing was rejected as untimely. On August 11, 2020, the trial court entered an order on Webb's motion for reinstatement for issuance of a proper order granting summary disposition. The court rescinded earlier orders and then entered, anew, orders granting summary disposition in favor of Fidelity for the reasons stated on the record and denying Webb's motion for reconsideration for the reasons previously provided. Webb appealed again in this Court. And Fidelity again moved to dismiss; however, this Court denied the motion, ruling that "[t]he August 11, 2020 [order], qualifies as a final order for purposes of this Court's jurisdiction under MCR 7.202(6)(a)(i)." *Webb v Fidelity Brokerage Servs*, unpublished order of the Court of Appeals, entered February 24, 2021 (Docket No. 354691).[2] We now tackle the issues presented on appeal.

---

[2] Fidelity also included this jurisdictional issue in its brief on appeal. Given this Court's order on jurisdiction, we need not delve into the matter any further.

III.  ANALYSIS

A.  STANDARDS OF REVIEW

We review de novo a trial court's decision on a motion for summary disposition.  *Altobelli v Hartmann*, 499 Mich 284, 294-295; 884 NW2d 537 (2016).  The question whether a claim is subject to arbitration is also reviewed de novo, as is the construction of contractual language.  *Id*. at 295.  Issues of statutory interpretation are likewise reviewed de novo, and this standard applies to the construction of state and federal statutes.  *Johnson v Johnson*, 329 Mich App 110, 118; 940 NW2d 807 (2019).  "We review a trial court's decision on a motion for reconsideration for an abuse of discretion."  *Frankenmuth Ins Co v Poll*, 311 Mich App 442, 445; 875 NW2d 250 (2015).

B.  PRINCIPLES GOVERNING SUMMARY DISPOSITION UNDER MCR 2.116(C)(7)

Pursuant to MCR 2.116(C)(7), summary disposition is proper when a claim is barred because of "an agreement to arbitrate[.]"  In *RDM Holdings, Ltd v Continental Plastics Co*, 281 Mich App 678, 687; 762 NW2d 529 (2008), this Court recited the principles pertaining to a motion for summary disposition brought pursuant to MCR 2.116(C)(7):

> Under MCR 2.116(C)(7) . . ., this Court must consider not only the pleadings, but also any affidavits, depositions, admissions, or other documentary evidence filed or submitted by the parties. The contents of the complaint must be accepted as true unless contradicted by the documentary evidence. This Court must consider the documentary evidence in a light most favorable to the nonmoving party. If there is no factual dispute, whether a plaintiff's claim is barred under a principle set forth in MCR 2.116(C)(7) is a question of law for the court to decide. If a factual dispute exists, however, summary disposition is not appropriate. [Citations omitted.]

C.  DISCUSSION

Webb begins the argument section of his brief on appeal by addressing the standard of review, which he claims is the "clear error" or "clearly erroneous" standard that is applied to findings of fact.  As indicated above, the pertinent standard of review is de novo in the context of a ruling on a motion for summary disposition, the applicability of arbitration, and the construction of contracts and statutes.

Webb argues that ERISA subjects plan fiduciaries to a duty of prudence and that Fidelity had a continuing obligation to monitor the status of his GM shares for changed circumstances following GM's bankruptcy and to take steps to recoup the loss of Webb's investment through opportunities such as the buyback program.[3]  This argument goes to the merits and substance of

---

[3] "[A] fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and . . . with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such

Webb's lawsuit and is entirely irrelevant to the question whether the court erred in ruling, as a matter of law, that the dispute was subject to arbitration. Webb next states that "[e]ven though the trial court did not base its ruling in granting summary disposition on the statute of limitations, [Webb shall] discuss[] that issue throughout this appeal because it was briefed in the lower court" and because Webb does not know whether this Court might consider the issue.[4] We shall not examine the issue whether Webb's lawsuit was time-barred nor entertain Webb's arguments on the matter because the trial court did not reach the issue, and Fidelity does not argue that the statute of limitations constitutes an alternative basis by which to affirm the order of summary disposition.

Webb next contends that "[t]he Plan at issue in this case is governed by . . . ERISA[]." He asserts that "Congress established a special kind of ERISA plan called an Employee Stock Ownership Plan (ESOP)." Again, the trial court rejected Webb's ERISA-based arguments on arbitration, ruling that "[w]hile not expressly discussed on the record, this [c]ourt found that ERISA is not applicable to this matter given that [Webb's] deposits appear to be personal and individualized rather than as part of an employer designated employee retirement account." 29 USC 1107 provides, in relevant part:

> (6) The term "employee stock ownership plan" [ESOP] means an individual account plan--
>
> (A) which is a stock bonus plan which is qualified, or a stock bonus plan and money purchase plan both of which are qualified, under section 401 of Title 26, and which is designed to invest primarily in qualifying employer securities, and
>
> (B) which meets such other requirements as the Secretary of the Treasury may prescribe by regulation.

In *Fifth Third Bancorp v Dudenhoeffer*, 573 US 409, 411-412; 134 S Ct 2459; 189 L Ed 2d 457 (2014), the United States Supreme Court discussed ESOPs:

> [ERISA] . . . requires the fiduciary of a pension plan to act prudently in managing the plan's assets. § 1104(a)(1)(B). This case focuses upon that duty of prudence as applied to the fiduciary of an "employee stock ownership plan" (ESOP), a type of pension plan that invests primarily in the stock of the company that employs the plan participants.
>
> We consider whether, when an ESOP fiduciary's decision to buy or hold the employer's stock is challenged in court, the fiduciary is entitled to a defense-friendly standard that the lower courts have called a "presumption of prudence." The Courts of Appeals that have considered the question have held that such a

---

matters would use in the conduct of an enterprise of a like character and with like aims[.]" 29 USC 1104(a)(1)(B).

[4] Despite devoting a great deal of attention to issues that are not relevant to this appeal, Webb acknowledges that the arbitration matter "is the only issue upon review."

presumption does apply, with the presumption generally defined as a requirement that the plaintiff make a showing that would not be required in an ordinary duty-of-prudence case, such as that the employer was on the brink of collapse.

We hold that no such presumption applies. Instead, ESOP fiduciaries are subject to the same duty of prudence that applies to ERISA fiduciaries in general, except that they need not diversify the fund's assets. § 1104(a)(2).

Although Webb does not directly state as much, his brief on appeal implicitly reflects a position that his investments in GM common stock managed by Fidelity were part of an ESOP, thereby triggering ERISA's applicability. Webb cites *Pfeil v State Street Bank & Trust Co*, 806 F3d 377, 380 (CA 6, 2015), wherein the United States Court of Appeals for the Sixth Circuit observed:

ERISA subjects plan fiduciaries to a duty of prudence. 29 USC § 1104(a)(1). This generally requires diversification. But . . . Congress established a special kind of ERISA plan called an Employee Stock Ownership Plan (ESOP). ESOPs are designed to invest primarily in qualifying employer securities, rather than to diversify across securities of many companies. . . . .

This case concerns an ESOP for employees of General Motors (GM). In 2008, GM faced severe business problems that resulted, ultimately, in its bankruptcy. Those events gave rise to this case. Plaintiffs . . . were GM employees who, prior to GM's most recent financial difficulties, elected to invest in the GM ESOP. Defendant . . . State Street Bank . . . served as fiduciary of certain pension plans, including the Common Stock Plan, for employees of GM. [Quotation marks and citations omitted.]

After citing *Pfeil* and without any attempt to particularly identify and establish Webb's Fidelity account as being part of a GM ESOP during the period of breach,[5] Webb submits a lengthy argument describing how Fidelity failed to act prudently in managing Webb's account and what it should and could have done to protect the investment. He contends that the assessment of the standard of prudence should not apply at the pleading stage and that there must be "discovery in this case and the submission and evaluation of evidence by the court; not summary disposition based solely on the pleadings." As noted earlier, the discussion concerning the substance or merits of the case is not pertinent to resolving this appeal, which is limited to the arbitration issue. Moreover, the trial court never assessed or determined whether Fidelity breached any fiduciary duty.

---

[5] In attachments to pleadings and other filings, Webb presented the trial court with numerous account statements, transactional documents, and investment reports that Fidelity sent to Webb over the years. These exhibits pertained to Webb's Fidelity account. They specifically reference Webb's Fidelity Rollover IRA, which apparently was established in 2008 considering the dates on the customer account application and brokerage contract. Nowhere in these documents is it indicated that the Fidelity account is part of an ESOP, nor does Webb make such a claim.

Following his discussion regarding Fidelity's alleged breaches of duty, Webb states "that he never received, signed, nor agreed to waive his right to a jury trial on his claims . . . and that the asserted arbitration provision is not supported by any admissible proof or verification, affidavit, or otherwise, and should be disregarded." This excerpt was cut and pasted verbatim from Webb's initial response to Fidelity's motion for summary disposition. The argument is undeveloped and ignores the brokerage contract and the signed customer account application, which documents Fidelity filed with the trial court. Moreover, Webb submitted an affidavit to the trial court, and the affidavit lacked any averment in which Webb claimed that he did not receive and sign the customer account application or that he did not receive the brokerage contract.

Webb next argues that while resolution of his *procedural* rights under ERISA may be subject to arbitration pursuant to an agreement, his *substantive* rights under ERISA, including his claims for breach of fiduciary duty, fraud, cover-up, and deceit, cannot be waived and made subject to arbitration in light of 29 USC 1132(a)(1)(B) and (a)(3). Webb contends that these statutory provisions reveal congressional intent to allow civil suits by plan participants for the purpose of enforcing substantive rights. 29 USC 1132(a)(1)(B) provides that "[a] civil action may be brought . . . by a participant or beneficiary . . . to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan[.]" And 29 USC 1132(a)(3) provides that "[a] civil action may be brought . . . by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan[.]"[6]

The trial court did not address these ERISA provisions because of its conclusion that there was no ERISA plan at issue in the first place. Additionally, Webb fails to cite any caselaw supporting his proposition that arbitration agreements concerning substantive rights under ERISA

---

[6] Although not cited by Webb, we note that 29 USC 1132(a)(2) provides that "[a] civil action may be brought . . . by a participant, beneficiary or fiduciary for appropriate relief under section 1109 of this title[.]" And 29 USC 1109 provides:

> Any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this subchapter shall be personally liable to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary, and shall be subject to such other equitable or remedial relief as the court may deem appropriate, including removal of such fiduciary. . . . .

While 29 USC 1132(a)(2) "does not provide a remedy for individual injuries distinct from plan injuries, that provision does authorize recovery for fiduciary breaches that impair the value of plan assets in a participant's individual account." *LaRue v DeWolff, Boberg & Assoc, Inc*, 552 US 248, 256; 128 S Ct 1020; 169 L Ed 2d 847 (2008).

are unenforceable pursuant to the "civil action" language of 29 USC 1132(a)(1)(B) and (a)(3). Indeed, the caselaw is contrary to Webb's position. In *Bird v Shearson Lehman/American Express, Inc*, 926 F2d 116, 122 (CA 2, 1991), the United States Court of Appeals for the Second Circuit held:

> Arbitration is not inconsistent with the underlying purposes of ERISA. Appellees have not sustained their burden of demonstrating that the text, legislative history, or underlying purposes of ERISA indicate that Congress intended to preclude a waiver of a judicial forum for claims arising under it. Accordingly, we hold that statutory claims arising under ERISA may be the subject of compulsory arbitration.[7]

The United States Court of Appeals for the Fifth Circuit has held that Congress did not intend to exempt statutory ERISA claims from being subject to arbitration agreements under the Federal Arbitration Act (FAA), 9 USC 1 *et seq*.; therefore, the customer agreement containing the arbitration clause at issue mandated arbitration of the ERISA claims. *Kramer v Smith Barney*, 80 F3d 1080, 1084 (CA 5, 1996). "In determining arbitrability, . . . no external legal restraints foreclose the arbitration of ERISA claims" and "federal courts have held that Congress did not intend to exclude actions arising under both the remedial and substantive portions of ERISA from arbitration pursuant to the FAA." *Williams v Healthalliance Hosps, Inc*, 158 F Supp 2d 156, 161 (D Mass, 2001). The United States Court of Appeals for the Sixth Circuit acknowledged that a majority of courts have held that disputes arising under ERISA can be subject to arbitration if the particular dispute falls within the parameters of an agreement to arbitrate. *Simon v Pfizer Inc*, 398 F3d 765, 774 (CA 6, 2005). Webb's reliance on the author's view in a 1986 law review article is simply inapposite in light of the caselaw that has developed. See Manley, *Civil Actions Under ERISA Section 502(a): When Should Courts Require That Claimants Exhaust Arbitral or Intrafund Remedies*, 71 Cornell L Rev 952 (1986).

Webb maintains that if arbitration is required, MCR 3.602(J) would severely curtail his rights if the award were adverse to Webb and he wished to appeal because the grounds for vacating an arbitration award under MCR 3.602(J) are narrow and limited. Assuming the applicability of

---

[7] In *Mitsubishi Motors Corp v Soler Chrysler-Plymouth, Inc*, 473 US 614, 628; 105 S Ct 3346; 87 L Ed 2d 444 (1985), the United States Supreme Court made the following general observations:

> By agreeing to arbitrate a statutory claim, a party does not forgo the substantive rights afforded by the statute; it only submits to their resolution in an arbitral, rather than a judicial, forum. It trades the procedures and opportunity for review of the courtroom for the simplicity, informality, and expedition of arbitration. We must assume that if Congress intended the substantive protection afforded by a given statute to include protection against waiver of the right to a judicial forum, that intention will be deducible from text or legislative history. Having made the bargain to arbitrate, the party should be held to it unless Congress itself has evinced an intention to preclude a waiver of judicial remedies for the statutory rights at issue. Nothing, in the meantime, prevents a party from excluding statutory claims from the scope of an agreement to arbitrate. [Citation omitted.]

MCR 3.602 in this case, we fail to understand how limited court review of an arbitration award negates the applicability of an arbitration clause. Webb does not present any coherent argument supported by authorities that indicates that MCR 3.602(J) can serve to undermine the initial enforceability of an arbitration agreement.

Webb next argues, again without reference to supporting authority, that he did not knowingly and understandingly waive his rights to a civil action under 29 USC 1132(a)(3) because the brokerage contract containing the arbitration clause was not attached to the signed customer account application and because the "print was less than 12 point." In *Mudge v Macomb Co*, 458 Mich 87, 105; 580 NW2d 845 (1998), our Supreme Court explained:

> It is not enough for an appellant in his brief simply to announce a position or assert an error and then leave it up to this Court to discover and rationalize the basis for his claims, or unravel and elaborate for him his arguments, and then search for authority either to sustain or reject his position. The appellant himself must first adequately prime the pump; only then does the appellate well begin to flow. [Quotation marks and citation omitted.]

It is also worth noting that this particular argument necessarily accepts the possibility that substantive rights under ERISA can be waived if done so knowingly and understandingly, which undermines Webb's entire position. We further note that the signed customer account application expressly states that the arbitration clause governed disputes arising under the application and the brokerage contract, and Webb acknowledged receipt of the brokerage contract's arbitration clause. A party is estopped from avoiding a contract on the ground that the party was ignorant of the provisions and language in the contract. *Scholz v Montgomery Ward & Co, Inc*, 437 Mich 83, 92; 468 NW2d 845 (1991).

Next, Webb focuses his attention on the language in the customer account application which provides that the "agreement shall be construed, administered, and enforced according to the laws of the Commonwealth of Massachusetts, except as superseded by federal law or statute," along with the language in the brokerage contract, which states that "[i]n some cases, a claim that is ineligible for arbitration may be brought in court." Webb asserts "that the relied upon agreement and arbitration clause is, in fact, superseded by federal law and statute." We assume, as he provides no elaboration, that Webb is speaking of ERISA. But Webb has failed to adequately confront the trial court's determination that Webb's Fidelity account was not part of an ERISA plan, and even assuming that ERISA were implicated, we again note that Webb has failed to show that ERISA precludes arbitration of an ERISA-based claim.

Webb also contends that this is one of those cases in which his claims were ineligible for arbitration and could be brought in court. Again, Webb does not elaborate, and to the extent that he relies on ERISA as the basis for the contention that his claims were ineligible for arbitration, we reject the assertion for the reasons discussed earlier. Furthermore, the arbitration clause is all-encompassing, providing that "[a]ll controversies that may arise between you and us concerning any subject matter, issue, or circumstance whatsoever (including, but not limited to, controversies concerning any account, order or transaction, or the continuation, performance, interpretation or breach of this or any other agreement between you and us, whether entered into or arising before, on, or after the date this account is opened) shall be determined by arbitration . . . ." This quoted

provision also defeats Webb's argument that the 2008 dates of the customer account application and brokerage contract prevent the arbitration clause from reaching earlier-purchased GM common stock.

Finally, Webb argues that recently cases have been filed in federal courts that alleged Fidelity committed fraud, breach of fiduciary duty, and other ERISA. Webb maintains that these cases demonstrate that civil actions like his can be pursued against Fidelity under the plain language of 29 USC 1132(a)(3). Webb, however, does not indicate or suggest that these cases involve arbitration issues and agreements. Also, we fail to see the relevance and value of mere allegations in pending federal lawsuits. Furthermore, Webb's argument again fails to acknowledge that the trial court here determined that Webb's Fidelity account was not part of an ERISA plan, which conclusion Webb has failed to adequately assail. Additionally, we have already rejected Webb's arguments under 29 USC 1132(a)(3). Lastly, Webb's argument, which references *federal* cases, ultimately reveals a jurisdictional flaw in his stance and legal maneuverings. Assuming that Webb's lawsuit is fully supported by ERISA as urged by Webb and that our conclusions to the contrary are in error, Webb's action would still need to be dismissed because the trial court—a state court—would not have jurisdiction over the ERISA-based lawsuit. 29 USC 1132(e)(1) provides:

> Except for actions under subsection (a)(1)(B) of this section, the district courts of the United States shall have exclusive jurisdiction of civil actions under this subchapter brought by the Secretary or by a participant, beneficiary, fiduciary, or any person referred to in section 1021(f)(1) of this title. State courts of competent jurisdiction and district courts of the United States shall have concurrent jurisdiction of actions under paragraphs (1)(B) and (7) of subsection (a) of this section.

Although Webb makes one fleeting reference to 29 USC 1132(a)(1)(B), his brief on appeal is otherwise wholly dominated by reliance on 29 USC 1132(a)(3) in support of his lawsuit. And, therefore, a federal district court would have exclusive jurisdiction over the civil action.

In sum, the trial court did not err by granting Fidelity's motion for summary disposition, and the court did not abuse its discretion by denying Webb's motion for reconsideration.

We affirm. Having fully prevailed on appeal, Fidelity may tax costs under MCR 7.219.

/s/ Karen M. Fort Hood
/s/ Jane E. Markey
/s/ Elizabeth L. Gleicher

-13-