**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

Nos. 20-3459, 20-3466
_____

DINA ABDURAHMAN

v.

PROSPECT CCMC LLC, DBA Crozer Chester Medical
Center; DORIAN JACOBS, Medical Doctor

PROSPECT CCMC LLC, DBA Crozer Chester Medical
Center,
Appellant 20-3459


DINA ABDURAHMAN

v.

PROSPECT CCMC LLC, DBA Crozer Chester Medical
Center; DORIAN JACOBS, Medical Doctor

DORIAN JACOBS, Medical Doctor,
Appellant 20-3466
_____

On Appeal from United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 2:20-cv-03609)
District Judge: Honorable Chad F. Kenney
_____

Argued November 9, 2021

Before: HARDIMAN, MATEY, SCIRICA, *Circuit Judges*.

(Filed: July 28, 2022)

Paul C. Lantis **[ARGUED]**
Tara Param
Littler Mendelson
1601 Cherry Street
Three Parkway, Suite 1400
Philadelphia, PA 19102
    *Counsel for Defendant - Appellant Prospect CCMC*
*LLC, DBA Crozer Chester Medical Center*

Nicholas C. Needle **[ARGUED]**
Andrew S. Gallinaro
Conrad O'Brien
1500 Market Street
West Tower, Suite 3900
Philadelphia, PA 19102
    *Counsel for Defendant - Appellant Dr. Dorian Jacobs*

Julie A. Uebler **[ARGUED]**
Console Mattiacci Law
1525 Locust Street
9th Floor
Philadelphia, PA 19102
    *Counsel for Plaintiff - Appellee*

---

OPINION OF THE COURT

---

MATEY, *Circuit Judge*.

Three corporations, comprised of two siblings, Crozer Chester Medical Center ("CCMC") and Prospect Health Access Network ("Prospect"), and a parent, Crozer Keystone Health System ("Crozer Keystone"), entered into several agreements with emergency medicine resident Dr. Dina Abdurahman, including an employment contract between Abdurahman and CCMC. Sophisticated entities, the corporations drafted the forms and designated the counterparties. Abdurahman's termination led her to sue CCMC, and CCMC promptly moved to arbitrate. Except Abdurahman signed an arbitration agreement with Prospect, not CCMC. A case of scrivener's error, savvy separation, or

2

something in between? We need not solve that riddle because the arbitration agreement with Prospect cannot stretch to govern Abdurahman's employment with CCMC. So we will affirm the decision of the District Court denying the motion to compel arbitration.

**I.**

Start with who is who, and what is what. Crozer Keystone owns healthcare companies that operate as wholly owned subsidiaries. One, Prospect, employs professionals working at hospitals. Another, CCMC, is a hospital. CCMC hired Abdurahman as an emergency medical resident. In preparation, Abdurahman signed a stack of new-hire paperwork. Within it, an at-will employment agreement with Crozer Keystone and an arbitration agreement with Prospect. Several weeks later, Abdurahman signed a residency agreement with CCMC.

Dr. Dorian Jacobs was an employee of Prospect. She also worked as CCMC's Director of Toxicology and, in that role, supervised Abdurahman. Abdurahman alleged that Jacobs sexually harassed her; Jacobs claimed the opposite and informed a CCMC Human Resources employee that Abdurahman had assaulted her. The dispute continued to escalate until Abdurahman was fired.

Abdurahman then filed a complaint with the Pennsylvania Human Relations Commission and the Equal Employment Opportunity Commission, alleging discrimination by CCMC. After the latter issued a Right to Sue letter, Abdurahman filed suit in Commonwealth Court against CCMC and Jacobs.[1] The Defendants removed, and then moved to dismiss, relying on Abdurahman's arbitration agreement with Prospect. The District Court declined, and CCMC and

---

[1] Abdurahman alleged that CCMC violated Title VII, Title IX, 42 U.S.C. § 1981, and the Pennsylvania Human Relations Act ("PHRA"). She also brought a defamation claim against CCMC and Jacobs, along with a PHRA claim against Jacobs individually.

3

Jacobs appeal. Agreeing with the District Court, we will affirm.[2]

## II.

We begin with two threshold questions.[3] First, is there a valid arbitration agreement between the parties? *See CardioNet, Inc. v. Cigna Health Corp.*, 751 F.3d 165, 172 (3d Cir. 2014). And second, does the dispute "fall with[in] the language of" that agreement? *Id.* (quoting *John Hancock Mut. Life Ins. Co. v. Olick*, 151 F.3d 132, 137 (3d Cir. 1998)). If the answer to both questions is yes, we must "enforce [the agreement] according to [its] terms." *Id.* (quoting *AT&T*

---

[2] The District Court had jurisdiction under 28 U.S.C. §§ 1331 and 1367. We have jurisdiction under 9 U.S.C. § 16. Because Abdurahman "responded to [CCMC's and Jacobs's] motion to compel arbitration with additional facts sufficient to place the agreement to arbitrate in issue," we review the motion to dismiss as one for summary judgment. *Guidotti v. Legal Helpers Debt Resol., LLC*, 716 F.3d 764, 776 (3d Cir. 2013). On de novo review, summary judgment is appropriate only if "'there is no genuine dispute as to any material fact' and, viewing the facts in the light most favorable to [Abdurahman], [CCMC and Jacobs] '[are] entitled to judgment as a matter of law.'" *Shuker v. Smith & Nephew, PLC*, 885 F.3d 760, 770 (3d Cir. 2018) (quoting Fed. R. Civ. P. 56(a)). Although the usual course is to move for a stay and an order compelling arbitration, moving to dismiss is fine when all claims are arbitrable. *Seus v. John Nuveen & Co.*, 146 F.3d 175, 179 (3d Cir. 1998), *overruled on other grounds by Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79 (2000).

[3] And a super-threshold question: whether the arbitration agreement delegates "gateway questions," such as the scope of the agreement, to an arbitrator. *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 68–70 (2010) (citations omitted). But we do "not assume that the parties agreed to arbitrate [gateway questions] unless there is clear and unmistakable evidence that they did so." *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995) (cleaned up). Finding no such evidence, we conclude that the parties did not.

4

*Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011)).[4] CCMC's claim fails on the first threshold question, and Jacobs's fails on the second.[5]

## A.     There is No Arbitration Agreement Between CCMC and Abdurahman

All agree that Prospect, not CCMC, signed the arbitration agreement with Abdurahman. Even so, CCMC argues that it should be able to enforce the agreement for two reasons: agency principles and equitable estoppel. Neither succeeds.

### 1.     Agency

Relying on *Pritzker v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, CCMC says it can enforce the agreement because it has an agency relationship with Prospect, the signatory. 7 F.3d 1110, 1121 (3d Cir. 1993). But *Pritzker* hurts, not helps, CCMC's argument. There, we permitted a corporation to enforce an arbitration provision in an agreement signed by its sibling where the non-signatory had to perform "certain services" related to the agreement. *Id.* at 1122. Here, the arbitration agreement does not even mention CCMC—never mind obligate it to perform "services." Nor does CCMC identify any other agreement obligating it to act on Prospect's behalf. And what is more, the *Pritzker* plaintiffs brought claims against both the signatory *and* non-signatory, alleging conduct that "demonstrate[d] that [the non-signatory's] interests [were] directly related to, if not predicated upon, [the signatory's] conduct." *Id.* This made the "community of interest" between the defendants "material to [that] decision." *Kaplan v. First Options of Chi., Inc.*, 19 F.3d 1503, 1515 (3d Cir. 1994).

---

[4] We apply Pennsylvania law to both threshold questions. *See Kirleis v. Dickie, McCamey & Chilcote, P.C.*, 560 F.3d 156, 160 (3d Cir. 2009).

[5] Abdurahman also argues the CCMC residency agreement trumps the arbitration agreement with Prospect. *See Jaludi v. Citigroup*, 933 F.3d 246, 253 (3d Cir. 2019). But the agreements deal with different subjects, so the residency agreement does not supersede. *See id.* at 256.

Abdurahman does not bring claims against Prospect, nor does she allege that CCMC's liability is "predicated upon" Prospect's conduct.

Pivoting, CCMC contends that "Abdurahman's alleged harm is predicated on *the relationship* between CCMC and Prospect." (Opening Br. at 16 (emphasis altered).) CCMC argues that Jacobs—a Prospect employee—"acted as an agent of CCMC" in supervising Abdurahman. (Opening Br. at 17.) But CCMC gets things backwards. *Pritzker* held that arbitration terms may bind agents where they bind those agents' principals. 7 F.3d at 1121–22; *see also Provenzano v. Ohio Valley Gen. Hosp.*, 121 A.3d 1085, 1097 (Pa. Super. Ct. 2015) (applying Pennsylvania law). That means CCMC must show that it was an agent of Prospect—the party "bound" by the arbitration agreement. 7 F.3d at 1121. At best, though, CCMC's argument shows the reverse—that Prospect acted as CCMC's agent—and we have never held this is sufficient. *See E.I. DuPont de Nemours & Co. v. Rhone Poulenc Fiber & Resin Intermediates, S.A.S.*, 269 F.3d 187, 199 (3d Cir. 2001) ("the rationale of *Pritzker* does not apply with equal force" where appellants sought "to hold a principal to an agent's agreement").

Indeed, *Pritzker* teaches that an agency relationship—without more—is not enough. There, the arbitration clause "govern[ed] 'all controversies which may arise between [the parties].'" 7 F.3d at 1114. In holding that the non-signatory was bound to arbitrate, we noted that the agreement "was broad enough in scope to encompass claims against agents of the [signatory]." *Bel-Ray Co. v. Chemrite (Pty) Ltd.*, 181 F.3d 435, 444 (3d Cir. 1999) (discussing *Pritzker*). And specifically, "we found that where the principal is bound to arbitration and the complaints arise out of the agent's conduct on behalf of that principal, the agent is bound by the principal's agreement to arbitrate disputes." *E.I. DuPont*, 269 F.3d at 199 (discussing *Pritzker*). In sum, the non-signatory was not bound to arbitrate all disputes; instead, it was only bound to arbitrate disputes arising from actions it made on behalf of the signatory, as dictated by the specific contours of their relationship.

Because CCMC was not Prospect's agent, and a mere agency relationship is insufficient, agency principles do not

permit CCMC to enforce the arbitration agreement between Prospect and Abdurahman.

2. Estoppel

CCMC alternatively argues Abdurahman must arbitrate her claims because "equitable estoppel principles squarely apply here and bind Appellants to the Arbitration Agreement." (Opening Br. at 18.) That is, some flavor of estoppel should connect CCMC to Prospect and, once created, should also create a fresh contractual duty for Abdurahman. We see no reason to depart from standard estoppel principles, a list that does not include the configuration, and the contracts, here.

We have invoked the concept of equitable estoppel to hold a non-signatory may not embrace some contractual terms while denying others, say an arbitration clause. *E.I. DuPont,* 269 F.3d at 200. Moreover, under Pennsylvania law, arbitration may be compelled by a non-signatory when there is an "obvious and close nexus between the non-signatories and the contract or the contracting parties" and the claims against them "stem[] from the same incident and implicate[] identical legal principles." *Dodds v. Pulte Home Corp.*, 909 A.2d 348, 351–52 (Pa. Super. Ct. 2006). An "obvious and close nexus" may arise from "the relationship between a signatory . . . and a non-signatory," *Provenzano*, 121 A.3d at 1097, or the relationship between a non-signatory and the contract, *Dodds*, 909 A.2d at 351.[6]

None of this aids CCMC's cause. Perhaps Abdurahman alleges that CCMC violated the residency agreement. But the residency agreement lacks an arbitration clause. So there is nothing in that contract to estop Abdurahman from repudiating. And a sibling corporate relationship, without more, cannot

---

[6] A standard "essentially the same as the test described in *DuPont*." *White v. Sunoco, Inc.*, 870 F.3d 257, 263 n.5 (3d Cir. 2017). In *DuPont*, we looked for a "close relationship between the entities involved," based on the "relationship of the alleged wrongs to the nonsignatory's obligations and duties in the contract and the fact that the claims were intimately founded in and intertwined with the underlying contract obligations." *E.I. DuPont*, 269 F.3d at 199 (cleaned up).

establish the "obvious and close nexus" necessary to invoke estoppel. There are, rather, two contracts with two sets of signatories, and both can be performed without conflict or inequity.

CCMC does not really disagree but sees something unfair in leaving the parties to their deals. First, CCMC argues, Abdurahman could have sued Prospect, pulling the entire dispute into the arbitration agreement. As a result, CCMC seeks a new rule of law: a presumption that if (at least in the eyes of a defendant) a plaintiff declines to name a party whose presence might implicate arbitration, then a court should interpret the agreements as if the plaintiff did. We decline the invitation.

To begin, no authority supports CCMC's idea.[7] And we fail to see how CCMC's rule could work. CCMC does not argue Prospect is a necessary party, and has not moved to join Prospect as a defendant. In that circumstance, the federal rules follow the common law practice that the plaintiff, not the defendant, controls the complaint. *See Lincoln Prop. Co. v. Roche*, 546 U.S. 81, 91 (2005) (citing 16 J. Moore et al., Moore's Fed. Prac. § 107.14[2][c], p. 107–67 (3d ed. 2005)). Departing from that standard to demand courts pierce the

---

[7] CCMC relies on non-precedential decisions that cut against, not in favor of, its proposed standard. *Requiring* a plaintiff to sue the signatory to an arbitration agreement just because a non-signatory wants to arbitrate is quite different than *permitting* a named non-signatory to invoke agency and estoppel grounds for joining in arbitration. *See, e.g.*, *Arnold v. Arnold Corp.*, 920 F.2d 1269, 1281 (6th Cir. 1990). So too a complaint that alleges both named defendants violated the same law through concerted misconduct, facts far from the combination of named and unnamed parties and multiple agreements here. *See Noye v. Johnson & Johnson Servs., Inc.*, 765 F. App'x 742, 747–48 (3d Cir. 2019). And there is no risk here of "simultaneous litigation and arbitration" of the same factual claims because there is no separate claim against Prospect, and no arbitrable claim against Jacobs. *See Caparra v. Maggiano's Inc.*, 2015 WL 5144030, at *8 (E.D. Pa. Sept. 1, 2015).

pleadings and determine, somehow, whether other parties and grounds might have been added and whether their absence is tied, in some way, to an intent to avoid arbitration, is unreasonable. Nor is it necessary to avoid an unreasonable interpretation of the parties' agreement. CCMC could have drafted a contract directing disputes to arbitration. *See Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 682 (2010). That it did not does not require rewriting the law to conform to its expectation.

Second, CCMC argues that Abdurahman's claims actually arise under the arbitration agreement. Following the facts backward, CCMC reasons since her employment with CCMC hinged on signing all the paperwork, including the arbitration agreement with Prospect, then everything that happened during her employment relates back to that contract, and into arbitration. That argument borrows from common law causation, not contract. True, at some point, Abdurahman's employment claims collapse into the moment she accepted her job at CCMC. But her claims are not "intimately founded in and intertwined with [any] underlying contract obligation[]." *E.I. DuPont*, 269 F.3d at 199 (quotation omitted). That is because the Prospect arbitration agreement creates no duties, and imposes no obligations, other than arbitrating all disputes with Prospect.

Taken together, equitable estoppel does not permit CCMC to control the allegations in, or parties to, Abdurahman's suit. As a result, it cannot compel arbitration under Abdurahman's agreement with Prospect.

**B.  The Claim Against Jacobs is Outside the Arbitration Agreement**

Abdurahman's claims against Jacobs require additional analysis because Jacobs was an employee of Prospect, so Jacobs is bound by, and may enforce, the arbitration agreement. *See Pritzker*, 7 F.3d at 1121. So we move to the second threshold question: whether the dispute "fall[s] with[in] the language of" the agreement. *CardioNet*, 751 F.3d at 172 (quoting *John Hancock Mut. Life Ins. Co.*, 151 F.3d at 137). It does not.

9

Abdurahman and Prospect agreed to arbitrate disputes "arising out of or relating to [the] Arbitration Agreement, . . . [Abdurahman's] employment with [Prospect], or the termination of [Abdurahman's] employment." (App. at 196.) Broad language, but not boundless because the agreement is limited to disputes arising from Abdurahman's "employment with" Prospect. (App. at 196.) And Prospect never employed Abdurahman, CCMC did. There is no way to squeeze Abdurahman's defamation and PHRA claims into the contractual language, so they may proceed in court. *See CardioNet*, 751 F.3d at 172.

## III.

The Appellants fail to establish their entitlement to judgment as a matter of law. We will affirm the District Court's order denying the motion to dismiss in favor of arbitration.