**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 22-1618

_____

BETH BERKELHAMMER, individually and as
representative of a class of participants and beneficiaries on
behalf of the ADP TotalSource Retirement Savings Plan;
NAOMI RUIZ, individually and as representative of a class
of participants and beneficiaries on behalf of the ADP
TotalSource Retirement Savings Plan,
                                                      Appellants

v.

ADP TOTALSOURCE GROUP, INC.; AUTOMATIC
DATA PROCESSING, INC.; ADP TOTALSOURCE
RETIREMENT SAVINGS PLAN COMMITTEE;
NFP RETIREMENT, INC.; JOHN DOES 1-40
_____

On Appeal from the United States
District Court for the District of New Jersey
(D.C. No. 2-20-cv-05696)
District Judge: Honorable Esther Salas
_____

Argued
December 6, 2022

Before: SHWARTZ, MATEY, and FUENTES, *Circuit Judges*.

(Filed: July 17, 2023)
_____

Jerome J. Schlichter
Sean E. Soyars **[ARGUED]**
Schlichter Bogard
100 South 4th Street, Suite 1200
St. Louis, MO 63102
        *Counsel for Appellants*

Jenya O. Godina
Meaghan M. VerGow **[ARGUED]**
O'Melveny & Myers
1625 Eye Street NW
Washington, DC 20006

Kevin Kraft
Catalina J. Vergara
O'Melveny & Myers
400 South Hope Street, 18th Floor
Los Angeles, CA 90071
        *Counsel for Appellee NFP Retirement, Inc.*

_____

OPINION OF THE COURT
_____

MATEY, *Circuit Judge*.

Beth Berkelhammer and Naomi Ruiz participated in the ADP TotalSource Retirement Savings Plan ("Plan"), an investment portfolio managed by NFP Retirement, Inc. ("NFP"). Displeased with NFP's performance, they filed suit under § 502(a)(2) of the Employment Retirement Income Security Act of 1974 ("ERISA") not for their own losses, but derivatively on behalf of the Plan. The Plan's contract with NFP contained an agreement to arbitrate disputes between the two entities. Berkelhammer and Ruiz say that since they did not personally agree to arbitrate, the arbitration provision does not reach their claims. The District Court disagreed, holding that Berkelhammer and Ruiz stand in the Plan's contractual shoes and must accept the terms of the Plan's contract. We agree and will affirm.

**I.**

The claims brought by Berkelhammer and Ruiz ("Appellants") focus on the Plan's management. ADP TotalSource, a fiduciary of the Plan,[1] created a committee to

_____

[1] Under ERISA, a plan's governing written instrument must "provide for one or more named fiduciaries who . . . have authority to control and manage the operation and administration of the plan." 29 U.S.C. § 1102(a)(1). "[A] fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries," acting with reasonable care to diversify investments, defray reasonable administrative expenses, and "minimize the risk of large losses." *Id.* § 1104(a)(1). ERISA permits a fiduciary to employ

handle administration. That committee entered into an Investment Advisory Agreement ("IAA") with NFP to obtain NFP's advice on the Plan's investment strategies. In the IAA, the Plan and NFP agreed to arbitrate a wide array of claims,[2] and that arbitration clause is the focus of this dispute.

The short story: Appellants, individually and as representatives of a class of participants and beneficiaries, sued ADP TotalSource, the administrative committee, and NFP on behalf of the Plan, alleging breaches of fiduciary duties and violations of ERISA. NFP responded with a motion to compel arbitration, which the District Court granted, reasoning that although Appellants had not personally consented to the arbitration clause in the IAA, the Plan had. Since Appellants sued on the Plan's behalf, the District Court held that arbitration was required.[3]

---

others to "render advice with regard to any responsibility such fiduciary has under the plan." *Id.* § 1102(c)(2).

[2] The IAA provides that "[a]ll disputes and controversies relating to the interpretation, construction, performance, or breach of" the agreement will be submitted to mediation and, if that fails, arbitration. App. 308. That provision also states that "[f]inal resolution of any dispute through arbitration may include any remedy or relief that the arbitrator deems just and equitable." App. 308.

[3] The District Court had jurisdiction under 28 U.S.C. § 1331 and 29 U.S.C. § 1132(e)(1), and we have jurisdiction under 28 U.S.C. § 1291. "We review the District Court's order compelling arbitration *de novo.*" *See Singh v. Uber Techs. Inc.*, 939 F.3d 210, 217 (3d Cir. 2019). There are "two possible standards under which a motion to compel arbitration could be decided—the motion to dismiss standard or the summary

## II.

The Federal Arbitration Act provides that "[a] written provision . . . to settle by arbitration a controversy . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. That statute places arbitration agreements "upon the same footing as other contracts, . . . [making] 'arbitration agreements as enforceable as other contracts.'" *White v. Samsung Elecs. Am., Inc.*, 61 F.4th 334, 338–39 (3d Cir. 2023) (citation omitted). As a result, "a court must hold a party to its arbitration contract just as the court would to any other kind."[4] *Morgan v. Sundance, Inc.*, 142 S. Ct. 1708, 1713 (2022). That Congressional command focuses our analysis on whether Appellants have a binding agreement to arbitrate under the IAA.

---

judgment standard." *Id.* at 216. If an arbitration agreement's existence is not apparent from the pleadings, the summary judgment standard applies and "the party opposing arbitration is given 'the benefit of all reasonable doubts and inferences that may arise.'" *Kaneff v. Del. Title Loans, Inc.*, 587 F.3d 616, 620 (3d Cir. 2009) (citation omitted). Because Appellants raise "additional facts sufficient to place the agreement" in dispute, we apply the summary judgment standard here. *Guidotti v. Legal Helpers Debt Resol., L.L.C.*, 716 F.3d 764, 776 (3d Cir. 2013).

[4] The obligation to treat arbitration contracts like any other contract is no different under ERISA. *See Pritzker v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 7 F.3d 1110, 1122 (3d Cir. 1993) ("ERISA claims are subject to compulsory arbitration under the FAA and in accordance with the terms of a valid arbitration agreement.").

Consent is the key, as "a court may submit to arbitration only those disputes . . . that the parties have agreed to submit." *Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 302 (2010) (citation omitted). Indeed, it is consent that allows arbitrators to decide cases at all because arbitrators "derive their powers from the parties' agreement to forgo the legal process and submit their disputes to private dispute resolution." *Lamps Plus, Inc. v. Varela*, 139 S. Ct. 1407, 1416 (2019) (citation omitted). So we usually ask "two threshold questions. First, is there a valid arbitration agreement between the parties? And second, does the dispute fall with[in] the language of that agreement?" *Abdurahman v. Prospect CCMC LLC*, 42 F.4th 156, 159 (3d Cir. 2022) (citation omitted) (alteration in original). Or, simpler, whether there is a contract and what it says. Both are answered using "traditional principles of contract and agency law." *Bel-Ray Co. v. Chemrite (Pty) Ltd.*, 181 F.3d 435, 444 (3d Cir. 1999) (citations omitted).

Neither question is much disputed here. The IAA is a contract that calls for arbitrating the sort of claims pressed by Appellants. Instead, this appeal asks who is a party to the IAA and whose consent—Appellants' or the Plan's—is needed for arbitration. The answers turn on the claims Appellants assert and the ordinary meaning of ERISA.

**A. ERISA Fiduciary Claims Give the Plan the Power of Consent**

Begin, as courts have long done, with the text of the statute, reading the words as "generally . . . understood in their usual and most known signification" "to interpret the will of the legislat[ure]." 1 William Blackstone, Commentaries *59 (George Sharswood ed., 1893). *See also United States v. Fisher*, 6 U.S. (2 Cranch) 358, 385 (1805) (Marshall, C.J.)

6

("That these words, taken in their natural and usual sense, would embrace the case before the court, seems not to be controverted."); *Brown v. Barry*, 3 U.S. (3 Dall.) 365, 367 (1797) (Ellsworth, C.J.) ("[T]he intention of the Legislature, when discovered, must prevail.").

Section 502 of ERISA authorizes "a participant, beneficiary or fiduciary" to bring a civil action against a fiduciary "for appropriate relief under section 1109," 29 U.S.C. § 1132(a)(2), which imposes personal liability on a fiduciary "who breaches any of the responsibilities, obligations, or duties" it owes the plan, 29 U.S.C. § 1109(a).[5] This is one of several causes of action that Congress created to enforce the "minimum standards" established to "assur[e] the equitable character of [employee benefit] plans and their financial soundness." Employee Retirement Income Security Act of 1974, Pub. L. No. 93-406, § 2(a), 88 Stat. 829, 832–33 (1974). ERISA also provides plan participants and beneficiaries "appropriate remedies, sanctions, and ready access to the Federal courts," *id.* § 2(b), 88 Stat. at 833, to file a complaint on the plan's behalf. But only for complaints filed on behalf of the plan.

So while § 502(a)(2) authorizes "recovery for fiduciary breaches that impair the value of plan assets in a participant's

---

[5] Appellants also sued under § 502(a)(3), 29 U.S.C. § 1132(a)(3), but "relief is not 'appropriate' under § 502(a)(3) if another provision [of ERISA] offers an adequate remedy," *LaRue v. DeWolff, Boberg & Assocs., Inc.*, 552 U.S. 248, 258 (2008) (Roberts, C.J., concurring in part and concurring in the judgment) (citing *Varity Corp. v. Howe*, 516 U.S. 489, 515 (1996)). As Appellants themselves recognized in their complaint, § 502(a)(2) provides such an adequate remedy.

7

individual account," it "does not provide a remedy for individual injuries distinct from plan injuries." *LaRue v. DeWolff, Boberg & Assocs.*, 552 U.S. 248, 256 (2008). Instead, civil actions under § 502(a)(2) "for breach of fiduciary duty [are] brought in a representative capacity on behalf of the plan as a whole" to "protect contractually defined benefits." *Mass. Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 142 n.9, 148 (1985); *In re Schering Plough Corp. ERISA Litig.*, 589 F.3d 585, 594 (3d Cir. 2009) ("Section 502(a)(2) claims are, by their nature, plan claims." (citing *Graden v. Conexant Sys. Inc.*, 496 F.3d 291, 295 (3d Cir. 2007))). Unsurprising, because it is the plan—and not the individual claimant—to whom the breaching fiduciary owes its duty. *See* 29 U.S.C. § 1104 (a fiduciary must "discharge [its] duties with respect to a plan solely in the interest of the participants and beneficiaries"); *see also Russell*, 473 U.S. at 140. If the claimants are successful, "the plan takes legal title to any recovery, which then inures to the benefit of its participants and beneficiaries." *Graden*, 496 F.3d at 295. All pointing to the plan, not the participants, as the relevant contracting party. *Cf. In re Schering Plough Corp. ERISA Litig.*, 589 F.3d at 594–95 (noting that a plan alone, and not an individual participant, has the power to release claims related to plan agreements).

Cases confirm that reading. Take *Hawkins v. Cintas Corp.*, where individuals brought an ERISA suit against their former employer, its investment policy committee, and board of directors, alleging breaches of fiduciary duties. 32 F.4th 625 (6th Cir. 2022). Must the plan arbitrate that claim? No, because the individual plaintiffs, not the plan, signed the arbitration agreement. And since "[t]he weight of authority and the nature of § 502(a)(2) claims suggest that these claims belong to the plan, not to individual [p]laintiffs," the court ruled that "the arbitration provisions in [the plaintiffs'] individual

8

employment agreements—which only establish the [p]laintiffs' consent to arbitration, not the plan's—d[id] not mandate that the[] claims be arbitrated." *Id.* at 627. So too *Munro v. University of Southern California*, 896 F.3d 1088 (9th Cir. 2018). There, like in *Hawkins*, the individual plaintiffs consented to arbitration, but the plans they sued on behalf of had not. *Id.* at 1090–91. Similar facts bred a similar outcome: "Because the parties consented only to arbitrate claims brought on their own behalf, and because the [e]mployees' present claims [we]re brought on behalf of the [p]lans," the court concluded that the dispute fell "outside the scope of the agreements." *Id.* at 1092. Both follow the best meaning of § 502(a)(2) to hold that the presence or absence of the individual claimants' consent to arbitration is irrelevant; what counts is the contract created by the plan.

That proposition holds here. Whereas in *Munro* and *Hawkins* the plaintiffs had agreed to arbitrate and the plans had not, here the Plan agreed to arbitrate, not Appellants. The difference in direction does not change the result: the Plan's agreement to arbitrate is what matters, and that agreement applies to Appellants' claims on the Plan's behalf. *See Russell*, 473 U.S. at 142 n.9; *Graden*, 496 F.3d at 295.

\* \* \*

Because Appellants' claims belong to the Plan, the Plan's consent to arbitrate controls. So we will affirm the District Court's judgment.